John Stone by his Will Apr. 27. 1695 devises his Plantation & the Profits of his Slaves & personal Estate to his Wife during Life And declares his Will to be “ that his Son R’d Metcalf & “ Daughter Ann his Wife live upon the said Plantation after “ her Death during their Lives and also keep & employ the “ Negros upon the s’d Plantation making Use as they shall see “ Cause of all the Profits of his said Land & clear produce of his “ s’d Negros Stock & Plantation Except the Increase of his s’d “ Negros there-after given away.” Then devises to Mary & Eliz. two Daughters of R’d & Ann Metcalf a Negro a piece by Name & to John their Son a Negro Child the next that should be born Then foil, this Clause “ I give unto my Daughter Ann’s Children “ that she shall bear hereafter one Negro Child apiece as it “ shall please God the [217] Negro Women shall bear them “ Further it is my Will that if any of the s’d Children prove “ disobedient to them that the s’d R. Metcalf & Ann his Wife “ do keep them until they shall submit themselves in Obedience *B233 “ to their Parents.” Then gives all his personal Estate to be divided among R’d & Ann Metcalfs Children after their Deaths And make R’d Metcalf Henry Fleet & Edwin Conway Extors
The Testors Wife died before him And Metcalf upon his Death got all the Slaves & personal Estate into his Possion without proving the Will w’ch was not produced till after his Death in 1699. & was then proved in Richmond Court by the Witnesses only A. M. after her Husbands Death got Possion & marrying one Barrow he was thereby in Possion Ann survived Barrow & died in 1728. She had four Children by Metcalf Mary Eliz. & John af’d & Sarah born after the Will made to whom after their Mothers Death Stone’s Estate belonged by his Will
The Pit. one of these Children having never reced any Part Except the Slave devised to her sues out an Adm’econ cumtesto annexo Metcalf & Conway 2 of the Exors being dead without proving the Will & Fleet the other refusing And brings this Bill for a Discovery of the Slaves & personal Estate of Stone that they may be divided according to his Will And she have her 4. Part
The Defts. set up sev’l Titles to these Slaves Some of them under the other Children of R’d & Ann Metcalf & others under the Children of Ann by her 2. Husband Barrow who they say are intitled to a Child a piece And the Deft. Rust has some Plate & other Things of Stones Estate
Before 1 speak to the Merits of this Case I will beg Leave to clear it of 2 Objections very much insisted on at the Trial at Law viz. 1. the Staleness of the Pits. Claim after a Division as pretended of the Slaves pursuant to Stones Will 2. The Irregularity pretended in Pits, suing out Administration
As to the 1. It is true the Testor had been dead a long Time but the Pits. Title did not accrue upon his Death but on the Death of Ann Metcalf the Surv’r of the Devisees for Life which happen’d no longer ago than 1728 In 1729. Pit. sued out Adm’econ & this Suit has been depending ever since So that we sued as soon as ever our Title happen’d And as to the Division talked of the Pit. never had one Slave or other Part of the Estate Except the Slave devised to her So that whatever Division has been among the rest is nothing to her She has never had her Part And surly there is no Injustice in seeking to obtain it 2. As to the Irregularity in the Adm’econ I apprehend that [218] Poin cannot now properly be enquired into In England *B234 we know the granting of Adm’econ is the Province of the Spiritual Courts And the Chancery cannot controul them but if they proceed irregularly the ■ Course is to obtain Prohibitions & Mandamus’s from the Common Law Courts And in the Case of a Probate of a Will tho’ great Fraud has appeared in making the Will Equity has refused to set aside the Will so long as the Probate was in Force 2. Vern. 8. Archer & Moss. 76. Nelson vs Oldfield Now this Court has it’s true a threefold Jurisdiction as a Court of Equity a Court of Common Law & it has also Jurisdiction of Testamentary Matters But then these Jurisdictions must not be confounded the proper Bounds between each ought to be kept up And this as a Court of Equity will no more intermeddle with testamentary Matters than if they were sitting as a Court of Law they would judge by the Rules of Equity — This Adm’econ then must be taken to be regular till it is repealed which this Court as a Court of Equity cannot do But to take away all occasion of Cavil I will shew that this Adm’econ is perfectly regular The Course of the Spiritual Court being where the Extors refuse or die before Probate to grant such an Adm’econ as this viz. cumtesto annex. 1 Sal. 304. Wankford ag’t Wankford And that was the Case here 2 of the Exors were dead & the other refused An Adm’econ De bonis non would have been improper as none of the Exors ever proved the Will. I will only add that Pit. having a Right by the Will might have brought this Suit without taking Adm’econ at all But she was first advised to bring an Action at Law And so an Adm’econ was necessary
The Questions arising upon the Merits of this Cause may be 4. 1. What Estate or Interest Richard & Ann Metcalf had in the Slaves & personal Estate by the Will. 2. Whether the Devise of the personal Estate to their Children after their Deaths be good And what will pass by this Devise of personal Estate. 3. Whether the Devise to John Metcalf & to the Children said Ann should bear thereafter of a Negro Child apiece as the Negro Women should bear them be a good Devise. If it be Then 4. Whether’Ann’s Children by her 2. Husband Barrow are intitled to a Negro Child apiece by that Devise
1. As to the Interest Richard & Ann Metcalf had There is no express Devise to them of the Slaves or personal Estate. The Testor only directs that “they shall keep & employ the Negros “ upon the Land making Use of all the Profits of his Land & *B235 “ clear produce of his Negros, Stock &c ” Which can be construed no more than a Devise of the Use & Occupation. But then by the Devise to their Children after their Death they have the Use for Life by Implication And surely it cannot be pretended they had any greater Estate or Interest At least for my Part I cannot perceive the least Colour to give them any Thing more And then certainly [219] 2. The Rem’r limited to their Children after their Death is good. There is only personal Estate mentioned in the Devise however it will hardly be disputed but that the Slaves pass by such Devise because at that Time they were no more than personal Estate. The Question then is whether the Rem’r of a Chattel personal may be limited after the Death of one or more Persons And surely it will not be denied that it may It was indeed formerly a Question tho’ it was allowed that the Use might be given to one for Life with Rem’r overw’ch seems to be our Case But now no Difference is made between a Devise for Life & a Devise of the Use for Life As the Testator’s Intention is the same in both Cases To serve that Intent the Judges will construe the Devise for Life to be only of the Use And then the Rem’r over is good These sort of Devises were first introduced in Terms for Years and settled in Matthew Mannings Case 8. Rep. 94. b. under the name of Executory Devises & afterwards in Lampets Case 10. Rep. 47. b. and are now extended equally to Chatties meerly personal provided the Limitation be appointed to arise within the Compass of a Life or Lives in being And it makes no Difference be the Lives never so many for there must be a Survivor And so it is only the Life of that Survivor And as a Learned Judge used to say the Candles are all lighted at once 1. Sid. 451. 1 Sal. 229. The Cases upon this Head are very numerous I shall only mention a few
Wood vs Sanders 1 Ch. Ca. 131. & cited in D. of Norfolks Case 3 Ch. Ca. 35. was a Devise to the Father for 60 years if he so long live Then to the Mother for 60 years if she so long live Then to John & his Extors if. he survive his Father & Mother If he died in their Life time having Issue then to his Issue But if he died without Issue living the Father or Mother Then to Edward John died without Issue in the Life of his Father & Mother And adjudged that the Rem’r was good Here the Rem’r was not to take Effect till after the Death of 3 Persons & the Contingency of one dying without Issue in the Life of another Which is stronger than our Case
Sed Vide Talbot 21.
*B236 Smith vs Clever 2 Vern. 38. 59. The Testor directed the Residue of his Estate to be put to Interest & half the Interest paid to his Sister during her Life & the other half to her Daughter & after the Mothers Death the Daughter to have all the Interest during her Life And if she died without Issue of her Body devised the” principal over The Dau’r died without Issue & the Rem’r over adjudged good So In Rachels Case cited in that supra a Devise was to the Wife for Life And if she were with Child Then to that Child And if that Child died without Issue Rem’r over which Rem’r was adj’d good
In both these Cases the Limitation is after two Lives & a Contingency of dying without Issue
Clargis vs D — ss of Albemarle Devise of Jewels for Life Rem’r [220] over 2 Vern. 245 & Hyde & Parrot 331. S. P. So Pinbury & Elkin 758. & 766. Devise to Wife And if she died without Issue by Testor 80£. to remain over And Rem’r good And the like Point adj’d in this Court April 1734 — between Lightfoot & Lightfoot where the Rem’r was limited upon a double Contingency of dying without Issue male Or if there should be any . ailure’ in the Male Line
For further Authoritys see FitzGibb. 314. Goldsmiths Comp, ag’t Hall
But this Rem’r is made good by the express Provision of our Act of 1727. w’ch is that where any Person before the Act had by Will disposed of any Slaves for Life or Lives & thereupon limited any Rem’r Such Rem’r shall be good w’ch is' exactly our Case.
Vide antea. 70.
3. Whether the Devise to John Metcalf & the Children that Ann Metcalf should have of a Negro Child apiece as the Negro Women sho’d bear them be a good Devise And I conceive not A Devise may be to a Person not in esse but I never yet read that a Thing not in esse could be bequeathed [It may be by the Civil Law 2. Dom. 159. It is a known Rule that a bare Possibility cannot be devised. So is the Case of Bishop & Fountain 3 Lev. 427. (a) which was a Rem’r limited after an Estate tail I know
of nothing in our Law so nearly resembling this Case as that I have mentioned of Possibilitys Cases in Point cannot be expected there being no Slaves in England. The Case of Villains comes the nearest to Slaves but I find nothing concerning them *B237 as to this Matter It is certainly no more than a Possibility whether a Woman shall have a Child And therefore I think the Devise of a Child that shall be afterwards born is not good Slaves are to be considered in this Respect as Chatties & were really nothing more at the Time of this Devise Now I believe the Devise of a Calf Colt &c. that should be bom afterwards wo’d not be good Besides it would be very inconvenient to allow of such Devises The Owner of the Mother we may suppose wo’d not be very careful either of the Mother in her Pregnancy or of the Child after it was born & some time it must remain with its Mother And this might occasion the Loss of many an Infant which is certainly a humane Consideration Besides the Owner of the Mother must be both at Charge & Trouble which seems unreasonable where he is to have no Benefit The Children therefore ought to follow the Property of the Mother And especially in this Case where neither Person nor Thing was in Esse at the Time of the Devise. If it besayed that the Intention of the Testator must be observed I agree it that is where his Intention is consistent with the Rule [221] of Law No. Intention of a Testator is suffic’t to intail a Chattle because it is against a Rule of Law And so here it is ag’t a Rule of Law that a Possibility should be devised But if this Devise sho’d be allowed Then there remains another Question
4. Whether the Children of A. Metcalf by her 2. Husband Barrow be intitled to a Child apiece by this Devise The Words of the Will are these “ I give unto my Daughter Ann’s Children “ that she shall bear hereafter one Negro Child apiece as it shall “ please God the Women shall bear them ” If we went no further & considered the Case upon this Part of the Clause by itself it would be clear the Children by Barrow would be intitled But the Intention of a Testator must be collected from the whole Will And therefore when we consider the Scope of this before us & particularly what immediately follows the Devise above in the very same Clause it will be evident the Testor intended only Ann’s Children by Metcalf What foil, is “ Further it is my Will that if any of these Children prove disobed’t to them that the said R. M. & Ann his Wife do keep them until they shall submit themselves in Obedience to their Parents ” The whole Clause runs thus —
After reading it there will need little Comment to prove that the Children here meant are the Children of R. & A. M. & no *B238 other The latter Part of the Clause is not strict Grammar but the Meaning is obvious enough “ If any of s’d Children prove disobedient to them ” Here Them should refer to 2 persons mentioned before but Ann only is named in the first Part of the Clause Which makes it more than probable that it was the Mistake of the Writer in not naming R’d in that first Part Upon this Supposition w’ch I am sure has some Foundation & will reconcile the Clause to Grammar & good Sense the Point is put beyond all Dispute But further Them here must be understood of the Parents of the Children for who else can Children be disobedient to besides it appears from the latter Part of the Clause “ till they submit to their Parents ” Now who those Parents are is immediately explained “ If the said Children prove disobed’t to them that the s’d R. & A. M. shall keep ” Here Them is sufficiently explained to be R. & A. M. Then this Word (said) sd. Rich’d & Ann proves they should have been both named before It is absurd to suppose the Testor sho’d direct R. & A. M. to keep Slaves devised to the Children of Ann by a 2. Husband because Richard must be first dead before she could have such Children So that of Necessity he must mean the Children of R’d & Ann & no other And upon Cons, of the whole Clause I think nothing can be plainer It is further evident from the whole Scope of this Will that the Testor had in View the Providing for Ann’s Children by R. M. only It is more than probable he had not under Cons, what afterwards happen’d that R. M. would die first & Ann [222] marry a 2. Husband. Since there is not the least Notice taken of that or of the Children of such 2. Marr. thro’ the whole Will The Rem’r of the personal Estate is limited to the Children of R. & A.Metcalf And no other Children are named or I dare say intended by the Testor If it be objected that the Children of the 2. Marr. are as nearly related to the Testor & it was as reasonable he sho’d provide for them as the other I answer Perhaps he would have done so Could he have foreseen there would have been such Children But as I have sayed he had no such Thing in View or under Cons. He never thought of such 2. Marr. And as to any Equity that may be pretended in construing the Will in Fav’r of the Children of the 2. Marr. There is no Equity in construing a Will ag’t the plain Intent & Meaning of a Testator. Such a Latitude in constructing Wills would subvert that Right men naturally have to dispose of their own A Man is not bound to give his *B239 Estate in the most reasonable & equitable Manner but his Will is the Law as to that The Question is not what the Testor ought to have done but what he has done So here the Question is not whether the Children of the 2. Marr. ought not in Equity to have a Part of their Grandfathers Estate but whether the Grandfather has given them any by his Will And that I conceive clearly he has not He never so much as thought of them
Upon the whole I hope it appears that Rich’d & A. Metcalf had only the Use of the Slaves & personal Estate during Life And that the Rem’r to their Children after their Deaths is good. That the the Devise of the Negro Children not born is void Or if it be not that the Children of Ann by her 2. Husband Barrow can claim nothing by that Devise And so I pray a Decree that the Slaves & personal Estate of the Testor now in being may be deliv’d up to the Pit to be divided pursuant to his Will
In this Case it was agreed that the Rem’r to the Children of Rich’d & Ann Metcalf was good And that the Devise of the Negro Children not in Esse at the Testors Death was void And so the Court decreed an Acco’t of the Slaves & personal Estate in Order to have them divided pursuant to Stones Will.
October 1736.

 See Jacobs Dictionary Title — Possibility.